[No. S046141. Apr. 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC ALDEN PANIZZON, Defendant and Appellant.

**COUNSEL**

Douglas C. Littlejohn and Dennis A. Fischer, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider, Marc E. Turchin, Susan D. Martynec and Shawn A. McGahey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—Defendant Eric Panizzon pled no contest to various felony counts pursuant to a plea bargain that specifically provided for the imposition of certain prison time. After the trial court sentenced defendant in

accordance with the plea bargain, defendant sought to appeal the sentence. The People requested the Court of Appeal to dismiss the appeal on two grounds: (1) defendant had failed to obtain a certificate of probable cause as required under Penal Code section 1237.5[1] and rule 31(d) of the California Rules of Court;[2] and (2) defendant had waived the right to appeal his sentence as part of the plea bargain. The Court of Appeal denied the dismissal request, but rejected defendant's appeal on its merits.

As we shall explain, the Court of Appeal erred in denying the People's request for a dismissal. Although defendant purports not to contest the validity of the negotiated plea, he is in fact challenging the very sentence to which he agreed as part of the plea. Since the challenge attacks an integral part of the plea, it is, in substance, a challenge to the validity of the plea, which requires compliance with the probable cause certificate requirements of section 1237.5 and rule 31(d). Because defendant failed to adhere to these requirements, we conclude the Court of Appeal should not have reached the merits of defendant's appeal. As an alternative but secondary ground for our ruling, we accept, for purposes of argument, defendant's contention that his challenge is an attack on the sentence and not the plea, and, even upon this basis, we find it is barred because the terms of the plea bargain prohibit him from attacking the sentence on appeal. We therefore reverse the judgment of the Court of Appeal, and remand the matter to that court with directions to enter a dismissal of the appeal.

## I.  BACKGROUND AND PROCEDURAL FACTS

As part of a negotiated plea bargain, defendant agreed to enter a plea of no contest (nolo contendere) to one count of kidnapping for ransom (§ 209, subd. (a)), two counts of anal rape by a foreign object (§ 289, subd. (a)), one count of soliciting another to dissuade a witness from testifying or to suborn perjury (§ 653f), and to admit a weapons use allegation (§ 12022, subd. (a)). Also as part of the plea bargain, defendant agreed to a sentence of life with the possibility of parole, plus 12 years. He also acknowledged that a restitution fine of not less than $200 and not more than $10,000 would be imposed and that he waived the right to appeal the sentence. In exchange for the plea, the People agreed to dismiss one conspiracy count (§ 182), two counts of rape by a foreign object (§ 289, subd. (a)), six counts of sexual battery by restraint (§ 243.4, subd. (a)), and one count of residential burglary (§ 459). The trial court accepted defendant's plea on the specified counts and dismissed the others. Approximately one month later, in conformance with

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]Unless otherwise indicated, all further references to rules are to the California Rules of Court.

the plea bargain, the trial court sentenced defendant to life with the possibility of parole, plus 12 years, and imposed restitution fines totaling $400.

Defendant subsequently filed a notice of appeal identifying the claim that his sentence was disproportionate to the sentences imposed upon his codefendants and thereby violative of the federal and state constitutional prohibitions against cruel and unusual punishment.[3] The People responded by requesting dismissal of the appeal on the grounds that defendant failed to obtain a certificate of probable cause (§ 1237.5; rule 31(d)) and that defendant had waived the right to appeal. After denying the People's request, the Court of Appeal rejected defendant's appeal on the merits and affirmed the judgment. Both defendant and the People petitioned for review.

## II. DISCUSSION

In this court, both sides complain of error by the Court of Appeal. The People, on the one hand, contend the court should not have disregarded defendant's failure to comply with section 1237.5 and rule 31(d) and his waiver of the right to appeal the sentence. Defendant, on the other hand, argues the court erroneously rejected the constitutional challenges to his sentence. We examine the People's claims of error first, as they are potentially dispositive.

As pertinent to this case, the rules governing a criminal defendant's right to appeal are set forth in section 1237.5 and rule 31(d).

Section 1237.5 provides in relevant part: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk." Notwithstanding the broad language of section 1237.5, it is settled that two types of issues may be raised in a guilty or nolo contendere plea appeal without issuance of a certificate: (1) search and seizure issues for which an appeal is provided under section 1538.5, subdivision (m); and (2) issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed. (*People* v. *Jones* (1995) 10 Cal.4th 1102, 1106 [43 Cal.Rptr.2d

---

[3]The notice of appeal also identified an issue regarding the propriety of consecutive sentencing on two of the counts. Defendant, however, relied solely upon the disproportionality issue in his briefs to the Court of Appeal.

464, 898 P.2d 910], and cases cited; see generally, Cal. Criminal Law: Practice and Procedure (Cont.Ed.Bar 2d ed. 1994) §§ 39.4, 42.7, pp. 1016, 1103.)

■ Rule 31(d) has two paragraphs. As we recently explained, the first paragraph implements section 1237.5's certificate requirement by "limit[ing] the time for the defendant to file the required statement of grounds, provid-[ing] the statement may serve as the notice of appeal, and stat[ing] the appeal 'shall not be operative' unless the trial court executes and files the certificate of probable cause."[4] (*People* v. *Jones*, *supra*, 10 Cal.4th at p. 1106.) The second paragraph implements rules governing those appeals that are not subject to section 1237.5's certificate requirement, i.e., appeals raising solely search and seizure or post-plea issues.[5] While the two paragraphs of rule 31(d) set forth different procedures for making an appeal operative, a defendant cannot manipulate the rule to bypass the statutory certificate requirement. Consequently, "[a]lthough an appeal purporting to rest solely on noncertificate grounds may be operative under rule 31(d), [second para-graph,] and may therefore result in preparation of a record and briefing, section 1237.5 does not allow the reviewing court to hear the merits of issues going to the validity of the plea unless the defendant has obtained a certificate of probable cause, or has sought and obtained relief from default in the reviewing court." (*People* v. *Jones*, *supra*, 10 Cal.4th at p. 1112, fn. 5.)

■ The purpose for requiring a certificate of probable cause is to discourage and weed out frivolous or vexatious appeals challenging convic-tions following guilty and nolo contendere pleas. (*People* v. *Breckenridge* (1992) 5 Cal.App.4th 1096, 1101 [8 Cal.Rptr.2d 1]; see also *People* v. *Manriquez* (1993) 18 Cal.App.4th 1167, 1171 [22 Cal.Rptr.2d 779].) The objective is to promote judicial economy "by screening out wholly frivolous guilty [and nolo contendere] plea appeals before time and money is spent

---

[4]The first paragraph of rule 31(d) provides in pertinent part: "If a judgment of conviction is entered upon a plea of guilty or nolo contendere, the defendant shall, within 60 days after the judgment is rendered, file as an intended notice of appeal the statement required by section 1237.5 . . . ; but the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section. Within 20 days after the defendant files the statement the trial court shall execute and file either a certificate of probable cause or an order denying a certificate and shall forthwith notify the parties of the granting or denial of the certificate."

[5]Rule 31(d)'s second paragraph provides: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 . . . , the provisions of section 1237.5 . . . requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds."

preparing the record and the briefs for consideration by the reviewing court." (*People* v. *Hoffard* (1995) 10 Cal.4th 1170, 1179 [43 Cal.Rptr.2d 827, 899 P.2d 896]; see *People* v. *Ballard* (1985) 174 Cal.App.3d 982, 987-988 [220 Cal.Rptr. 323].)

■ It has long been established that issues going to the validity of a plea require compliance with section 1237.5. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881] (*Ward*).) Thus, for example, a certificate must be obtained when a defendant claims that a plea was induced by misrepresentations of a fundamental nature (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872]) or that the plea was entered at a time when the defendant was mentally incompetent (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 282 [61 Cal.Rptr. 644, 431 P.2d 228]). Similarly, a certificate is required when a defendant claims that warnings regarding the effect of a guilty plea on the right to appeal were inadequate. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028].)

■ In this case, defendant does not purport to challenge the validity of his no contest plea. Nonetheless, he seeks to appeal the constitutionality of the sentence to which he agreed as part of the negotiated plea bargain. Under these circumstances, do the requirements of section 1237.5 apply?[6]

The following principles guide our analysis. In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." (*People* v. *Ribero* (1971) 4 Cal.3d 55, 63 [92 Cal.Rptr. 692, 480 P.2d 308].) Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5. (*People* v. *McNight* (1985) 171 Cal.App.3d 620, 624 [217 Cal.Rptr. 393] (*McNight*).)

In *McNight, supra,* 171 Cal.App.3d 620, the Court of Appeal determined, under circumstances very similar to those here, that a defendant's challenge to the imposition of a negotiated sentence went to the heart of his plea agreement and therefore constituted a challenge to the validity of the plea. There, as part of a negotiated plea, the defendant pled guilty to three counts

---

[6]Although the matter was not identified in the notice of appeal, defendant also claims he was inadequately admonished regarding the waiver of appellate rights contained in the waiver and plea agreement. Under *People* v. *Kaanehe, supra,* such a claim is clearly subject to section 1237.5. (19 Cal.3d at p. 8.)

of rape and one firearm use allegation. In exchange for the plea, the prosecution dismissed various other charges and agreed to recommend a prison term of 21 years. After the trial court imposed the recommended sentence, the defendant filed a notice of appeal and applied to the trial court for a certificate of probable cause pursuant to section 1237.5. Although the defendant did not purport to contest the validity of the plea itself, he sought to challenge the sentence on the ground that consideration of mitigating circumstances should have resulted in imposition of a sentence less than the agreed-upon sentence. (171 Cal.App.3d at pp. 622, 624.) After the trial court denied his application for a certificate, the defendant tried to convince the Court of Appeal that section 1237.5 was inapplicable because he did not seek withdrawal of his guilty plea, but only appellate review of the post-plea sentencing procedure.

The Court of Appeal rejected the defendant's argument. Applying the "substance-of-the-appeal" test, the court determined that the defendant was, in effect, claiming he was prejudiced by the trial court's acceptance of the prosecutor's recommended sentence and by his counsel's failure to argue mitigating circumstances. (*McNight, supra,* 171 Cal.App.3d at p. 624.) In finding that the claim challenged the validity of the guilty plea, the court drew from our decision in *People v. Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026]: " 'The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment. . . . When a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain. Whether the defendant formally seeks to withdraw his guilty plea or not is immaterial; it is his escape from vulnerability to sentence that fundamentally alters the character of the bargain.' " (*McNight, supra,* 171 Cal.App.3d at p. 624.) After noting that the trial court had acted in complete accordance with the terms of the plea agreement at the sentencing hearing, the Court of Appeal held that, under those circumstances, the imposition of sentencing at the post-plea hearing was not so separate and distinct from the defendant's plea of guilty as to implicate a post-plea sentencing issue for which a certificate under section 1237.5 was not required. (171 Cal.App.3d at p. 625; see also *People v. Sabados* (1984) 160 Cal.App.3d 691, 695-696 [206 Cal.Rptr. 799] [where defendant pled to a specific degree of crime with knowledge that sentence would be 25 years to life, claim of disproportionality of sentence challenged the validity of the plea and could not be considered on appeal absent certificate of probable cause].)

Defendant does not address *McNight, supra.* Nor does he deny that the agreed-upon sentence of life with the possibility of parole, plus 12 years,

was an integral part of the plea agreement. Instead, defendant emphasizes that his claim of error, i.e., that the bargained sentence is unconstitutional when compared to the sentences of his codefendants, is based on events that occurred *after* the no contest plea was entered.[7] In defendant's view, such error represents the "archetypal instance" of post-plea error for which a probable cause certificate is not required. This argument is without merit.

While a trial court's error in making certain decisions after a plea may give rise to challenges that do not require compliance with section 1237.5, all the trial court did here was to sentence defendant in accordance with the previously entered plea. The mere fact that this happened a month after the plea, however, is not determinative. Moreover, that the events supposedly giving rise to defendant's disproportionality claim occurred afterwards likewise is of no consequence. Rather, "the crucial issue is *what* the defendant is challenging." (*People* v. *Ribero*, *supra*, 4 Cal.3d at p. 63, italics added.) Here, by contesting the constitutionality of the very sentence he negotiated as part of the plea bargain, defendant is, in substance, attacking the validity of the plea. For that reason, and consistent with *McNight*, *supra*, 171 Cal.App.3d 620, we hold that the certificate requirement of section 1237.5 applies.

In the proceedings below, the Court of Appeal reached the opposite conclusion. Relying upon *People* v. *Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904] and *People* v. *Knauer* (1988) 206 Cal.App.3d 1124 [253 Cal.Rptr. 910], both of which followed the general rule that section 1237.5 is inapplicable to sentencing errors arising after a plea is taken, the court disregarded defendant's failure to obtain a certificate. That reliance was misplaced. Unlike the instant situation, the negotiated pleas in those decisions related to the issue of guilt *without specification of the penalty to be imposed.*[8] Since the sentencing decisions were clearly separate and distinct from the defendants' pleas, in substance as well as temporally, any challenges to the sentencing did not implicate the validity of the pleas and therefore did not require compliance with section 1237.5. Here, however, the sentence defendant received was part and parcel of the plea agreement he negotiated with the People. Accordingly, the statutory certificate requirement applies because defendant's contention that the sentence violated the constitutional prohibition against cruel and unusual punishment falls squarely within the parameters of a challenge to the plea.

---

[7]According to the facts recited in the Court of Appeal's opinion below, codefendant Stephen Gillen received a 12-year prison sentence for simple kidnapping and use of a firearm and codefendant Jeffrey Locas received 732 days in the county jail for simple kidnapping.

[8]Moreover, in *People* v. *Sumstine*, *supra*, the particular sentencing claim appears to have been reserved as part of the plea agreement. (36 Cal.3d at p. 914.)

The reasoning we employ finds support in *Ward, supra,* 66 Cal.2d 571, the seminal case holding that compliance with section 1237.5 is not required where the defendant asserts that error occurred in post-plea adversary hearings conducted by the trial court for the purpose of determining the degree of the crime and the penalty to be imposed. In explaining the rationale for this holding, *Ward* observed in part that, in such situations, the concomitant of imposing section 1237.5's requirements "would mean . . . that the prosecution must meet its traditional burden of proof in a hearing held for the purpose of determining the degree of a crime, but paradoxically a defendant would be denied the right to question on appeal whether the burden had been met." (66 Cal.2d at p. 576.) But, recognized *Ward,* when a defendant pleads guilty to a particular degree of the crime, thus obviating the need for an adversary hearing to determine the degree of the crime, "there is rationale for confining the right of appeal to a situation in which fundamental errors may have occurred." (*Id.* at p. 575.) In those situations, *Ward* implied, the right of appeal is properly subject to the requirements of section 1237.5. (66 Cal.2d at p. 575; see *People* v. *Zamora* (1991) 230 Cal.App.3d 1627, 1635 [282 Cal.Rptr. 100].) Similarly, where, as here, a defendant agrees to a particular sentence as part of a plea bargain, a separate adversary hearing is unnecessary and the prosecution need not meet the traditional burden of proof in order to determine the proper penalty to be imposed. In such instances, the rationale for circumscribing the right to appeal pursuant to section 1237.5 applies with equal force.[9]

In sum, we are persuaded by *McNight*'s reasoning that a challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself. Therefore, it was incumbent upon defendant to seek and obtain a probable cause certificate in order to attack the sentence on appeal. (§ 1237.5.) ▮ Yet even if we accept defendant's contention that his claim is an attack on the sentence that does not require a certificate, we conclude the appeal must still be dismissed. We proceed to discuss this alternative ground for dismissal of the appeal, accepting for such purpose defendant's argument that his claim attacks merely the sentence and not the plea. As we shall demonstrate, defendant is barred from challenging the negotiated sentence on appeal because the terms of the plea bargain prohibit such a challenge.

▮ The negotiated plea agreement, which results in the waiver of important constitutional rights, "is an accepted and integral part of our

---

[9] We recognize, of course, that *Ward* was decided in the context of the former indeterminate sentencing laws. Under the present determinate sentencing scheme, a plea of guilty to a particular degree of a crime, entered without an agreement as to the specific penalty to be imposed, may require a separate adversary hearing to determine the appropriate sentence. Nonetheless, the broad principle recognized in *Ward,* i.e., that the right of appeal may be properly confined where a plea eliminates the need for further adversary hearings, remains persuasive in the context of determinate sentencing and is fully applicable here.

criminal justice system." (*People* v. *Vargas* (1993) 13 Cal.App.4th 1653, 1658 [17 Cal.Rptr.2d 445]; see *People* v. *West* (1970) 3 Cal.3d 595, 604 [91 Cal.Rptr. 385, 477 P.2d 409].) Such agreements benefit the system by promoting speed, economy and finality of judgments. (13 Cal.App.4th at p. 1658.)

"When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement." (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861]; see *In re Troglin* (1975) 51 Cal.App.3d 434, 438 [124 Cal.Rptr. 234] [both the People and the accused should be held to the terms of a plea bargain].) Of course, before taking the plea, the trial court must admonish the defendant of the constitutional rights that are being waived, as well as the direct consequences of the plea. (*People* v. *Walker*, *supra*, 54 Cal.3d at p. 1022.) Just as a defendant may affirmatively waive constitutional rights to a jury trial, to confront and cross-examine witnesses, to the privilege against self-incrimination, and to counsel as a consequence of a negotiated plea agreement, so also may a defendant waive the right to appeal as part of the agreement. (*People* v. *Vargas*, *supra*, 13 Cal.App.4th at pp. 1658-1660; see *People* v. *Nguyen* (1993) 13 Cal.App.4th 114 [16 Cal.Rptr.2d 490]; accord, *U.S.* v. *Rutan* (8th Cir. 1992) 956 F.2d 827; *U.S.* v. *Navarro-Botello* (9th Cir. 1990) 912 F.2d 318; *U.S.* v. *Wiggins* (4th Cir. 1990) 905 F.2d 51.)[10]

To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary. (*People* v. *Vargas*, *supra*, 13 Cal.App.4th at p. 1659; *People* v. *Nguyen*, *supra*, 13 Cal.App.4th at p. 119.) Waivers may be manifested either orally or in writing. (*People* v. *Berkowitz* (1995) 34 Cal.App.4th 671, 678 [40 Cal.Rptr.2d 150].) The voluntariness of a waiver is a question of law which appellate courts review de novo. (*People* v. *Vargas*, *supra*, 13 Cal.App.4th at p. 1660.)

In examining the particular facts before us, we observe that prior to entering his plea of no contest, defendant read and signed an 11-page document entitled "Waiver of Constitutional Rights and Plea of Guilty or 'No Contest'" (the Waiver and Plea agreement). That document reflected, inter alia, the following information and statements initialed by defendant:

"A.  CHANGE OF PLEA—CONDITIONS

---

[10]Although some jurisdictions have invalidated, as a matter of public policy, all waivers of the right to appeal (e.g., *State* v. *Ethington* (1979) 121 Ariz. 572 [592 P.2d 768]; *People* v. *Butler* (1972) 43 Mich.App. 270 [204 N.W.2d 325]), defendant concedes that the great majority of other jurisdictions that have addressed the issue have approved the use of such waivers.

"
 . . . . . . . . . . . . . . . . . . . . . . . .

"3. My lawyer has told me that if I plead guilty or no contest to the above charge(s) and admit the prior conviction(s) enhancement(s), prior prison term(s) and/or serious felony offense(s), the court will sentence me as follows unless the court concludes the negotiated plea is not in the interest of justice, in which case the court will allow me to set aside my plea and enter a plea of not guilty:

"Agreement: Defendant to receive 6 yrs. on Ct. 3 and 3 yrs. on Ct. 5, consecutive with PC 12022(a) allegation. Defendant to receive 2 yrs. on PC 653(F) [*sic*] charge consecutive to all other cts. Total determinative sentence = 12 yrs. Def. will receive life term on PC 209 charge.

"
 . . . . . . . . . . . . . . . . . . . . . . .

"B.  CONSEQUENCES OF PLEA

"
 . . . . . . . . . . . . . . . . . . . . . . .

"11. I understand that I am pleading guilty or no contest to an offense and/or admitting special allegation(s) which means by law I CANNOT be placed on probation and that I MUST be sentenced to state prison for the term selected by the judge. [Citations.]

"
 . . . . . . . . . . . . . . . . . . . . . . .

"F.  ENTRY OF PLEA

"1. I have had enough time to talk to my lawyer about the case and have told him/her all the facts and circumstances known to me about the case.

"2. My lawyer has carefully gone over with me this Waiver of Constitutional Rights form. My lawyer has explained the possible sentence which could be imposed as a result of my plea of guilty/no contest. I understand the nature of the charge(s) against me.

"3. I have discussed with my attorney the charge(s), prior conviction(s), enhancement(s), prior prison term(s), and/or serious felony offense(s) alleged against me and any facts and possible defenses.

"
 . . . . . . . . . . . . . . . . . . . . . . .

"5. I offer my plea of 'Guilty' or No Contest freely and voluntarily with a full understanding of all the matters set forth on this form. No one has

made any threats against me, used any force against me, my family or loved ones, nor has anyone made any promises except as set out on this form in order to convince me to plead guilty or no contest. I am not under the influence of any drug(s), medication, alcohol or any other substance which would impair my judgment.

"............................

"7. I hereby waive and give up my right to appeal from the sentence I will receive in this case. I also waive and give up my right to appeal the denial of any and all motions made and denied in my case.

"8. I have personally initialed each of the above boxes and discussed them with my attorney. I understand each and every one of the rights outlined above and I hereby WAIVE and GIVE UP each of them in order to enter my plea to the above charge(s)."

Below defendant's signature on the Waiver and Plea agreement, the following statement appears along with defense counsel's signature:

"I am the attorney of record and I have explained each of the above rights to the defendant. I have explored the facts with him/her and studied his/her possible defenses to the charge(s) and enhancing allegations. I believe there is a factual basis for each of the pleas and admissions set forth above. I concur in his/her decision to waive the above rights and to enter a plea of guilty or no contest. I further stipulate this document may be received by the court as evidence of defendant's intelligent waiver of these rights and that it should be filed by the clerk as a permanent record of that waiver. No promises of a particular sentence or sentence recommendation have been made by me or, to my knowledge, by the prosecuting attorney or the court which has not been fully disclosed in this form. I personally went over this document with the defendant. I observed the defendant to read, date and sign this document."

The document also reflected the People's concurrence in the plea, as well as the trial judge's signature and his findings that defendant "expressly, knowingly, understandingly, and intelligently waived" his constitutional rights and that defendant's plea was "freely and voluntarily made with an understanding of the nature and consequences thereof."

At a hearing on the change of plea, defendant represented he recognized the Waiver and Plea agreement and affirmed he had had ample time to review it with his attorney. As to the charges to which defendant agreed to

plead no contest, defendant acknowledged his maximum prison exposure of life with the possibility of parole plus 19 years and the agreed-upon sentence of life with the possibility of parole plus 12 years. He also confirmed that he had read, understood, and personally initialed the relevant paragraphs of the agreement, and that he had signed and dated it. Defense counsel likewise acknowledged his signature on the document and expressed his belief that defendant was knowingly and intelligently giving up his constitutional rights. The trial court then found that defendant had freely and voluntarily waived his constitutional rights.

Defendant asserts the above record fails to demonstrate a valid waiver of the right to appeal because he was not properly admonished regarding that right. (*People* v. *Rosso* (1994) 30 Cal.App.4th 1001, 1006 [36 Cal.Rptr.2d 218].) This assertion is devoid of merit.

■ As noted previously, a trial court normally must admonish a defendant of the direct consequences of a plea of guilty or nolo contendere. (*People* v. *Walker, supra,* 54 Cal.3d at p. 1022.) However, a court may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment. (*People* v. *Castrillon* (1991) 227 Cal.App.3d 718, 722 [enforcing, as part of a plea agreement, defendant's written waiver of the right to appeal the denial of a motion to suppress pursuant to § 1538.5, subd. (m)]; cf. *In re Ibarra* (1983) 34 Cal.3d 277, 286 [193 Cal.Rptr. 538, 666 P.2d 980] ["[A] defendant who has signed a waiver form [waiving *Boykin-Tahl* rights] upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge."].) "Only if in questioning the defendant and his attorney the trial court has reason to believe the defendant does not fully comprehend his rights, must the trial court conduct further canvassing of the defendant to ensure a knowing and intelligent waiver of rights." (*People* v. *Castrillon, supra,* 227 Cal.App.3d at p. 722; cf. *In re Ibarra, supra,* 34 Cal.3d at p. 286 ["The judge need only determine whether defendant had read and understood the contents of the form, and had discussed them with his attorney."].) Thus, in *People* v. *Castrillon, supra,* a trial court was not required to question a defendant specifically regarding the right to appeal where both the defendant and his attorney had signed a waiver form and had attested to the defendant's knowing and voluntary relinquishment of his rights and where the trial court's examination of the defendant and his attorney raised no questions concerning defendant's comprehension of his rights and of the consequences of his plea. (227 Cal.App.3d at pp. 722-723; see also *People* v. *Kelly* (1994) 22 Cal.App.4th 533 [27 Cal.Rptr.2d 383] [written waiver of right to appeal contained in change of plea form enforced where form recited that defendant's attorney had reviewed and explained the terms and consequences of the plea to

defendant]; *People* v. *Evanson* (1968) 265 Cal.App.2d 698 [71 Cal.Rptr. 503] [waiver of right to jury trial upheld where defense counsel represented to trial court that he had explained such right to the defendant], cited with approval in *In re Tahl* (1969) 1 Cal.3d 122, 133, fn. 6 [81 Cal.Rptr. 577, 460 P.2d 449].)

■ Consideration of the foregoing principles leads us to conclude that the record in this case demonstrates an enforceable waiver of defendant's right to appeal his sentence. Even though the trial court did not admonish defendant regarding the right to appeal, the Waiver and Plea agreement signed by defendant and his attorney contains defendant's representations that he understood the sentence that would be imposed if he pleaded no contest, that he had discussed with his attorney both the paragraph specifying the sentence to be imposed and the paragraph containing the waiver of the right to appeal the sentence, and that he fully understood all matters set forth in the document without exception. The Waiver and Plea agreement also reflects defense counsel's representation that he personally went over the document with defendant and concurred in defendant's decision to waive the rights specified in the document, as well as counsel's stipulation that the trial court could consider the document as evidence of defendant's intelligent waiver of such rights. At the court hearing, both defendant and his attorney attested to the document's valid execution. Additionally, the in-court questioning of defendant and his attorney raised no doubts as to defendant's understanding of his rights and the consequences of his no contest plea. Under these circumstances, we are satisfied that defendant's waiver of the right to appeal the bargained sentence was knowing, intelligent, and voluntary despite the absence of a specific admonishment by the trial court. (*People* v. *Castrillon*, *supra*, 227 Cal.App.3d at p. 722; cf. *In re Ibarra*, *supra*, 34 Cal.3d at pp. 284-286.)

*People* v. *Rosso*, *supra*, 30 Cal.App.4th 1001, does not support defendant's position. In that case, the reviewing court rejected the People's claim that the defendant had orally waived his appellate rights as follows: " '[The Court]: . . . Have you discussed these [constitutional] rights with your attorney? [¶] [Rosso]: Yes. [¶] The Court: Do you understand each and every one of these rights? [¶] [Rosso]: Yes, I understand. [¶] The Court: Do you waive and give up these rights *and your right to appeal*? [¶] [Rosso]: Yes, I waive them.' " (30 Cal.App.4th at p. 1006.) As noted in the decision, however, this was the only mention of appellate rights. The record in that case, unlike that here, apparently contained no evidence of a written waiver of appellate rights read and signed by the defendant after discussion with his attorney and no evidence that an attorney had explained the right to appeal to the defendant. Consequently, *People* v. *Rosso*, *supra*, stands in sharp contrast to the instant situation and does not call for a different result.

Defendant next argues that any error occurring after the entry of his plea constituted "future sentencing error" that was beyond the scope of the waiver. In particular, defendant contends that "[w]hen, as here, the sentence a defendant receives pursuant to a plea bargain is challenged on the basis of its constitutional disproportionality in comparison with sentences imposed subsequently on his codefendants, even a specific waiver as to sentencing error cannot logically encompass *prospective* events that the defendant *did not contemplate* in agreeing to a specified sentence." Relying upon the principle that a waiver is "an intentional relinquishment or abandonment of a *known* right or privilege" (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357], italics added; *People* v. *Charles* (1985) 171 Cal.App.3d 552, 569 [217 Cal.Rptr. 402] (conc. opn. of White, P. J.)), defendant asserts that a specific waiver of the right to appeal a negotiated sentence is unenforceable as to "unforeseen or unknown errors" occurring subsequent to the waiver.

To support this argument, defendant relies upon two cases finding that a defendant's waiver of "possible future error" is outside the defendant's contemplation and knowledge at the time the waiver is made. (*People* v. *Sherrick* (1993) 19 Cal.App.4th 657, 659 [24 Cal.Rptr.2d 25]; *People* v. *Vargas*, *supra*, 13 Cal.App.4th at p. 1662.) But while these authorities generally support the proposition that a defendant's general waiver of the right to appeal,[11] given as part of a negotiated plea agreement, will not be construed to bar the appeal of sentencing errors occurring subsequent to the plea, the defendants in those decisions were attempting to appeal sentencing issues that were left *unresolved* by the particular plea agreements involved. In *People* v. *Sherrick*, *supra*, 19 Cal.App.4th 657, the defendant was permitted to argue on appeal that the trial court utilized a patently erroneous standard in determining his ineligibility for probation where the plea agreement and waiver of appellate rights evidently contemplated no specific sentence or probation eligibility. Similarly, in *People* v. *Vargas*, *supra*, 13 Cal.App.4th 1653, the defendant was not barred from challenging an alleged misapplication of conduct credits on appeal where the plea agreement and waiver of appellate rights apparently made no mention of conduct credits. In each of those decisions, the appellate court viewed the sentencing issue as not being within the contemplation and knowledge of the defendant at the time the waiver was made and so refused to extend thereto a general waiver of the right to appeal.

That, however, is not the situation here. Not only did the plea agreement in this case specify the sentence to be imposed, but by its very terms the

---

[11]In using the term "general waiver," we mean a waiver that is nonspecific, e.g., "I waive my appeal rights" or "I waive my right to appeal any ruling in this case."

waiver of appellate rights also specifically extended to any right to appeal such sentence. Thus, what defendant seeks here is appellate review of an integral element of the negotiated plea agreement, as opposed to a matter left open or unaddressed by the deal. Since both the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made, the reasoning of *People* v. *Sherrick, supra,* and *People* v. *Vargas, supra,* is inapposite.

Defendant's characterization of the issue on appeal as an "unforeseen or unknown error" is off the mark because the sentence imposed by the court was neither unforeseen nor unknown at the time defendant executed the Waiver and Plea agreement. Moreover, the essence of defendant's claim is that his sentence is disproportionate to his level of culpability (see *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]), a factor that also was known at the time of the plea and waiver. Thus, the real thrust of defendant's claim concerns events predating entry of the plea and waiver.

It is true that in *People* v. *Dillon, supra,* we looked to the relatively lenient sentences of a defendant's coconspirators to underscore our conclusion that the punishment imposed upon the defendant was grossly disproportionate to his individual culpability. (34 Cal.3d at p. 488.) But even if defendant here did not know or contemplate *the fact* that his codefendants would later negotiate and receive sentences more lenient than his, we see no reason to deem his waiver of appellate rights unenforceable.

The reasoning articulated by the United States Supreme Court in upholding the general validity and enforceability of plea agreements is persuasive in putting into proper perspective the claim that a defendant should be relieved of a waiver of appellate rights because of the subsequent occurrence of unforeseen events perceived to be favorable to the defense. "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." (*Brady* v. *United States* (1970) 397 U.S. 742, 756-757 [25 L.Ed.2d 747, 761, 90 S.Ct. 1463].) This logic applies with equal force to dispel any notion that the subsequent

unfolding of unknown or unforeseen events somehow renders a waiver of appellate rights unintelligent or otherwise defective at the time it was given.

Contrary to defendant's assertions, nothing in *U.S.* v. *Jacobson* (2d Cir. 1994) 15 F.3d 19 compels a different conclusion. In that case, the defendant pled guilty to one count of conspiracy to receive misbranded and adulterated drugs in interstate commerce and to commit wire fraud. Both he and the government agreed not to appeal in the event the court imposed a sentence within a range of eight to fourteen months under the federal sentencing guidelines.[12] After receiving a sentence of 12 months, the defendant appealed on the ground that the length of sentence, when compared with those subsequently received by his coconspirators, was based on a constitutionally impermissible factor (naturalized status) and therefore constituted a denial of due process. The appeals court held that the defendant did not waive his right to appeal on the aforementioned ground. Although the court recognized that an agreement not to appeal a sentence within the agreed guidelines range is enforceable, it observed that a waiver of the right not to be sentenced on the basis of a constitutionally impermissible factor may be invalid. (15 F.3d at pp. 22-23, citing *U.S.* v. *Marin* (4th Cir. 1992) 961 F.2d 493, 496 ["a defendant could not be said to have waived his right to appellate review of a sentence . . . based on a constitutionally impermissible factor such as race"].) Accordingly, the court read the plea agreement at issue narrowly, noting that the defendant's appeal raised no guidelines issues. (15 F.3d at p. 23.) Additionally, the court rejected the government's argument that the defendant had waived his challenge by failing to raise the issue in the district court. Observing that the coconspirators were all sentenced after him, the court reasoned that an objection based on unconstitutional disparity could not have been made at the time of the defendant's sentencing. (*Ibid.*)

*U.S.* v. *Jacobson, supra*, does not, as defendant suggests, undermine the enforceability of his waiver of the right to appeal his negotiated sentence. In this case, the People do not argue that defendant's failure to raise the disparity issue at the time of his sentencing constituted an implied waiver of the right to appeal such a matter. Consequently, defendant's reliance upon

---

[12]Specifically, the waiver stated: " 'In the event that the Probation Department or the Court contemplates any Guidelines adjustments, enhancements, or calculations not referred to above, the parties each reserve the right to make all appropriate arguments concerning the same. Notwithstanding the previous sentence, it is specifically understood and agreed that neither party will appeal a sentence by the Court that falls within the sentencing ranges calculated above, or at the sentencing ranges applicable in the event the Court rejects the Government's recommendation for the additional two-level reduction described above, even should the Court and/or Probation Department reach that sentencing range by a Guidelines analysis different from that set forth above.' " (15 F.3d at p. 23, fn. 1.)

that portion of the federal decision is misplaced.[13] Moreover, defendant here makes no claim that his sentence—which reflected the terms of his negotiated plea bargain with the People—was based upon a constitutionally impermissible factor arguably not waivable by agreement. Accordingly, this case does not call for construing defendant's waiver of the right to appeal the sentence in a manner so as to avoid a waiver of that issue.

Finally, invoking the principle that "[a]n appellate court may 'correct a sentence that is not authorized by law whenever the error comes to the attention of the court'" (*In re Harris* (1993) 5 Cal.4th 813, 842 [21 Cal.Rptr.2d 373, 855 P.2d 391]), defendant argues that California decisional law has long recognized the necessity of affording judicial review where, as here, a sentence is challenged as invalid or in excess of the court's jurisdiction. We disagree.

Appellate courts have relied upon the principle to which defendant refers in allowing habeas corpus review of a claim or sentencing error amounting to an excess of jurisdiction when a defendant has delayed in raising the issue (e.g., *In re Harris*, *supra*, 5 Cal.4th at p. 842) and in holding that an unauthorized sentence is no bar to the imposition of a proper, even if more severe, judgment thereafter (e.g., *People* v. *Serrato* (1973) 9 Cal.3d 753, 764-765 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds, *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Massengale* (1970) 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237]). These authorities, however, do not support appellate review of a sentence disproportionality claim where, as here, the sentence has been negotiated as part of a plea bargain and is not in excess of the maximum statutory penalty.[14] Indeed, considerations of fairness weigh against the availability of review since the absence of a fully developed factual record in a plea bargained case is likely to place the People at a significant disadvantage in meeting such a claim.

---

[13]Although the briefing in this case is unclear on the point, it may also be that defendant was in fact aware of his codefendants' negotiated sentences at the time the trial court sentenced defendant pursuant to the plea agreement. While the record appears to establish that defendant may not have known of his codefendants' negotiated sentences on October 15, 1993, when he entered his no contest plea, it discloses that the trial court entered codefendant Gillen's plea (which included Gillen's negotiated sentence) on October 18, 1993—approximately one month *before* defendant was actually sentenced on November 16, 1993. Accordingly, it may be that, unlike the situation in *U.S.* v. *Jacobson*, *supra*, defendant could have raised the disparity issue at the time of his sentencing.

[14]We likewise reject defendant's related claim that *People* v. *Wingo* (1975) 14 Cal.3d 169 [121 Cal.Rptr. 97, 534 P.2d 1001], which recognized that a sentence disproportionality claim (involving a non-negotiated sentence) is cognizable on habeas corpus despite a defendant's implied waiver for having failed to assert the claim previously, supports review of a disproportionality claim under the present circumstances.

Accordingly, we find that a valid, express, and unrestricted waiver of the right to appeal a negotiated sentence should be deemed to include a waiver of the right to appeal it on the ground that it is disproportional and therefore invalid.

## III.  CONCLUSION

Although defendant maintains he is not contesting the validity of his bargained plea, he seeks to challenge the very sentence he negotiated as part of the plea. Consistent with the reasoning of *McNight, supra*, 171 Cal.App.3d 620, we conclude that such a claim is, in substance, an attack on the validity of the plea which is not reviewable on appeal because defendant failed to seek and obtain a certificate of probable cause. (See *People* v. *Jones, supra*, 10 Cal.4th at p. 1112, fn. 5.) Further, even if it is assumed that defendant's claim does not challenge the validity of the plea, the claim still is not reviewable on appeal because the terms of the plea bargain preclude any appeal of the negotiated sentence.

In light of our conclusion that the Court of Appeal should not have disregarded defendant's failure to comply with section 1237.5 and rule 31(d) or, alternatively, his waiver of appellate rights, we do not reach the merits of defendant's challenge to the sentence.[15] The judgment of the Court of

[15]It has not escaped our attention that some appellate courts have proceeded to address the merits of a defendant's appeal following a guilty or nolo contendere plea despite the defendant's failure to strictly comply with section 1237.5 and rule 31(d). (E.g., *People* v. *Young* (1991) 228 Cal.App.3d 171, 179 [278 Cal.Rptr. 784]; *People* v. *Ellis* (1987) 195 Cal.App.3d 334, 338 [240 Cal.Rptr. 708]; *People* v. *Arwood* (1985) 165 Cal.App.3d 167, 173 [211 Cal.Rptr. 307]; *People* v. *Tirado* (1984) 151 Cal.App.3d 341, 348 [198 Cal.Rptr. 682]; *People* v. *Musante* (1980) 102 Cal.App.3d 156, 158 [162 Cal.Rptr. 158].) Reasoning that improperly presented appellate issues could return in the form of a petition for a writ of habeas corpus, such courts chose to dispose of the issues on their merits in the apparent belief that the "interest of judicial economy" would be served thereby. (E.g., *People* v. *Ellis, supra*, 195 Cal.App.3d at p. 338; *People* v. *Arwood, supra*, 165 Cal.App.3d at p. 173; *People* v. *Tirado, supra*, 151 Cal.App.3d at p. 348.) We agree, however, with those other appellate courts that condemn such practice as frustrating the very purpose of section 1237.5 to discourage frivolous appeals. (E.g., *People* v. *Ballard, supra*, 174 Cal.App.3d at p. 987; *People* v. *Pinon* (1979) 96 Cal.App.3d 904, 909 [158 Cal.Rptr. 425].) As one such court astutely observed, the purposes behind section 1237.5 will remain vital only if appellate courts insist on compliance with its procedures. (*People* v. *Pinon, supra*, 96 Cal.App.3d at p. 909.)

In the same vein, we admonish trial courts to carefully evaluate whether a defendant has shown "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" justifying a certificate of probable cause. (§ 1237.5, subd. (a).) For the goal of judicial economy to be realized, it is critical that trial courts rigorously perform their duty to screen out frivolous or vexatious appeals before time and money are spent preparing the record and the briefs for consideration by the appellate courts.

Appeal is reversed, and the matter is remanded to that court with directions to dismiss defendant's appeal.

Lucas, C. J., Kennard, J., George, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.**—I dissent.

I cannot conclude that defendant validly waived his right to appeal his sentence on the effective ground that it is disproportionate to his personal responsibility and moral culpability in violation of the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution, as applied to the states under the due process clause of the Fourteenth Amendment, and the cruel or unusual punishment clause of article I, section 17, of the California Constitution. (See *People* v. *Marshall* (1990) 50 Cal.3d 907, 937-938 [269 Cal.Rptr. 269, 790 P.2d 676].) The Court of Appeal rejected this claim on the merits. So would I.

Convicted defendants generally enjoy a right of appeal under state law. (Pen. Code, § 1237.) If they can waive this right at all, they must do so "knowing[ly], intelligent[ly] and voluntar[il]y." (*People* v. *Vargas* (1993) 13 Cal.App.4th 1653, 1657, 1659 [17 Cal.Rptr.2d 445].) Defendant seems not to have made his purported waiver knowingly. His claim of disproportionality depends in part on the sentences meted out to his codefendants. It appears that he was not aware of such sentences at the time of his purported waiver. (See *People* v. *Vargas*, *supra*, 13 Cal.App.4th at pp. 1662-1663.)

Second, I question whether certain types of claims, including one that the sentence violates certain constitutional norms, may be waived. "For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." (*U.S.* v. *Marin* (4th Cir. 1992) 961 F.2d 493, 496.)

Third, I cannot countenance the use of this written form to enter defendant's various pleas. In my concurring and dissenting opinion in *In re Ibarra* (1983) 34 Cal.3d 277, 291 [193 Cal.Rptr. 538, 666 P.2d 980], joined by two other justices, I expressed "grave reservations about the use of waiver forms in a felony context." Most problematic here, the waiver of the right to appeal is buried at the end of the form, amid a panoply of disparate clauses. Evidently the subject of waiving appeal was of little importance to the form drafter. And although defendant was carefully examined about his understanding of the rights he was waiving, appeal was not mentioned. I am not

convinced that he realized the implications of signing the obscure provision waiving his right to appeal, notwithstanding his ritualized oral declaration that he understood the form's provisions.

I would affirm the Court of Appeal's judgment.